**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02229-CMA-STV

ALEC HICKERSON, and
EDINAM MOTEN, on behalf of themselves and all similarly situated persons,

    Plaintiffs,

v.

POOL CORPORATION,

    Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant Pool Corporation's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (the "Motion to Compel") [#11] and Defendant Pool Corporation's Second Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (the "Second Motion to Compel") [#27] (collectively, the "Motions").  Both Motions have been referred to this Court.  [#29] The Court has carefully considered the Motions and related briefing, oral argument held on March 11, 2020, the entire case file, and the applicable case law.  For the following reasons, this Court respectfully **RECOMMENDS** that the Motions be **DENIED.**[1]

---

[1] "[T]he law in the Tenth Circuit is unclear as to whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)."  *Bohart v. CBRE, Inc.*, No. 17-cv-00355-RM-KMT, 2018 WL 1135535, at *2 (D. Colo. Feb. 28, 2018) (comparing cases).  Out of an abundance of caution, the Court will issue a recommendation on the instant Motions.

**I.      BACKGROUND**

Defendant Pool Corporation ("Pool") is a wholesale distributor of swimming pool equipment, parts, and supplies, and related leisure products. [##1, ¶ 4; 11-1, ¶ 4] Pool has operations throughout the United States. [#11-1, ¶ 4] Plaintiff Alec Hickerson was an Operations Manager at Pool's Littleton, Colorado location from about June 2016 to May 2017.[2] [#1, ¶¶ 12-13] Plaintiff Edinam Moten was an Operations Manager at Pool's Livonia, Michigan location from about June 2017 to March 2018. [##1, ¶¶ 14-15; 11-1, ¶ 12] Plaintiffs bring this action on behalf of themselves and all current and former exempt-classified Operations Managers who work and/or have worked for Pool within the United States at any time from August 5, 2016 to the date of judgment on this action. [See generally #1]

Following the filing of this action, two additional former Pool employees, Esteban Guijarro and Nathaniel Webber (the "Opt-in Participants"), filed a Notice of Consent to Join seeking to opt-in as plaintiffs. [#25] Mr. Guijarro was employed by Pool in California from on or about June 6, 2016 through January 2017. [##27-1, ¶ 11; 31, 9] Mr. Webber was employed by Pool in Virginia from on or about June 7, 2016 through December 2016. [##27-1, ¶ 12; 31, 9].

According to Pool, Plaintiffs and the Opt-in Participants each electronically signed identical Arbitration Agreements when hired by Pool. [##11-1, ¶¶ 15-16; 27-1, ¶¶ 15-16; see also ##11-2; 11-3; 27-2; 27-3] Each Arbitration Agreement begins as follows:

---

[2] A Declaration submitted by Defendant in support of the Motion to Compel contends that Mr. Hickerson was hired by Pool in Colorado on or about August 6, 2016. [#11-1, ¶ 11]

2

> This Arbitration Agreement ("Agreement") is made by and between [Pool] and the undersigned applicant, employee, paid or unpaid intern or individual applying for or holding a compensated position with [Pool] ("the undersigned applicant/employee/intern") (collectively "the parties").
>
> By their signatures below, the parties mutually agree to submit any and all claims that may arise between [Pool] and the undersigned applicant/employee/intern that cannot be resolved internally to binding arbitration subject to the following terms and conditions:

[##11-2; 11-3; 27-2; 27-3 (footnote omitted)]  Following these opening paragraphs, the Arbitration Agreements list twenty terms and conditions (the "Conditions").  [*Id.*]  Of relevance to the instant Motions, Condition 1 requires (with exceptions not relevant here) that all claims, disputes, or controversies arising between the parties shall be submitted to binding arbitration.  [*Id.*]  Condition 12 further provides that "[t]he parties mutually agree that this Agreement Constitutes a Waiver of any Right of either party to bring a lawsuit and to a jury trial concerning any dispute covered by this Agreement." [*Id.* (emphasis omitted)]

> Condition 17 states:
>
> By signing below, the undersigned applicant/employee/intern acknowledges that he/she has read, or has had read to him/her, all of the terms and conditions of this Agreement. The undersigned applicant/employee/intern hereby declares that he/she makes this acknowledgment knowingly, voluntarily, and of his/her own free will, without duress or any other promises.

[*Id.*]  Condition 18 provides:

> This Agreement is being entered into on a voluntary basis. The applicant/employee/intern acknowledges that he/she will have seven (7) days following the date of execution of this Agreement to cancel and revoke this Agreement, and this Agreement will not be enforceable or effective until the expiration of the seven (7) day period. In the event applicant/employee/intern does not revoke this Agreement within the seven (7) day revocation period, the applicant/employee/intern agrees that employment and/or continued employment with [Pool] beyond the seven (7) day revocation period constitutes a ratification of his/her voluntary

3

> acceptance of the terms of this Agreement. Any revocation of this Agreement must be sent via U.S. Mail, postage prepaid and postmarked within the seven (7) day revocation period, to [Pool's Human Resources Department].

[*Id.*] Following the twenty terms and conditions, the Arbitration Agreements conclude: "[a]greed and accepted" and then contain signature lines for both the applicant/employee/intern and a Pool representative. [*Id.*]

Each of the four Plaintiffs/Opt-in Participants electronically signed their Arbitration Agreement.[3] [##11-2; 11-3; 27-2; 27-3] None opted out of the Arbitration Agreement as provided by Condition 18. [##11-1, ¶ 21; 27-1, ¶ 21] Pool, however, did not sign any of the Arbitration Agreements until June 2019, shortly before this lawsuit was initiated[4] and after Plaintiffs/Opt-in Participants had left Pool's employ. [##11-2; 11-3; 27-2; 27-3]

Through the Motions, Pool seeks to compel arbitration of Plaintiffs/Opt-in Participants' claims. [##11, 27] Plaintiffs have responded to the Motions [##26, 31], and Pool has replied [##28, 32] On March 11, 2020, the Court conducted a hearing on the Motions. [#36]

## II. LEGAL STANDARDS

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 1 *et seq.*; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (finding that employment contracts fall within the FAA, except "contracts of employment of transportation workers"). But "[t]he existence of an agreement to arbitrate is a

---

[3] Each were also given an Employee Handbook that referenced the Arbitration Agreement. [##11-4; 11-5; 11-6, 8; 27-4; 27-5; 27-6, 8]
[4] Plaintiff's filed this lawsuit on August 6, 2019, but Plaintiffs claim that Pool began signing the Arbitration Agreements after being notified that Plaintiffs intended to bring this lawsuit. [#26, 2] Pool did not sign the Arbitration Agreement with Mr. Moten until August 7, 2019—one day after the lawsuit was filed. [#11-3]

threshold matter which must be established before the FAA can be invoked." *Avedone Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "[U]nlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1370 (D. Colo. 2014) ("*Nesbitt I*") (quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)), *aff'd*, 811 F.3d 371 (10th Cir. 2016) ("*Nesbitt II*"); *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) (stating that "presumption [of arbitrability] disappears when the parties dispute the existence of a valid arbitration agreement"). "A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable." *Nesbitt I*, 74 F. Supp. 3d at 1371 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

If the court determines the existence of a valid and enforceable arbitration agreement, the FAA then applies. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Nesbitt I*, 74 F. Supp. 3d at 1370 (same). Accordingly, the FAA requires the Court to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds*, 470 U.S. at 221, unless the agreement to arbitrate is invalidated by "generally

applicable contract defenses, such as fraud, duress, or unconscionability," *Nesbitt II*, 811 F.3d at 376 (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018). But an arbitration agreement will not be nullified by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

In considering a motion to compel arbitration under the FAA, the court applies "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005); *see also Ragab v. Howard*, 841 F.3d 1134, 1139 (10th Cir. 2016) ("When parties do not dispute the material facts surrounding an arbitration provision, then a district court, while viewing the facts most favorable to the non-moving party, can decide as a matter of law whether the parties actually agreed to arbitrate," applying a "standard [that] is similar to the summary judgment standard"). Accordingly, first Pool "must present evidence sufficient to demonstrate an enforceable arbitration agreement." *Stein*, 396 F. Supp. 2d at 1213. Then, the burden shifts to Plaintiffs "to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.*

### III.   ANALYSIS

In its Motions, Pool argues that the Arbitration Agreements signed by Plaintiffs and the Opt-in Participants require Plaintiffs and the Opt-in Participants to submit their claims to binding arbitration. [*See generally* ##11, 27] Plaintiffs respond that: (1) the express terms of the Arbitration Agreements required Pool to sign the Agreements, (2) that requirement was not fulfilled when Pool signed the Agreements after Plaintiffs left Pool's employ, and (3) in any event, Pool waived its right to Arbitration. [*See generally*

##26, 31] Because the Court agrees that the Arbitration Agreements required Pool's signature to be effective and that Pool's untimely signature did not create a binding contract, the Court respectfully RECOMMENDS that the Motions be DENIED.

### A. The Arbitration Agreements Required Both Parties' Signatures

As a threshold matter, the Court must determine whether an agreement to arbitrate existed in the first place. *Avedone Eng'g*, 126 F.3d at 1287. Here, because the parties dispute whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.[5] *Nesbitt I*, 74 F. Supp. 3d at 1370; *Dumais*, 299 F.3d at 1220. In determining whether there was an agreement to arbitrate, this court must apply state contract law principles.[6] *Nesbitt I*, 74 F. Supp. 3d at 1371.

---

[5] *Lamps Plus, Inc. v. Varela*, relied upon by Pool during oral argument, is distinguishable. 139 S. Ct. 1407 (2019). There, the parties disputed only the scope, not the existence of, the arbitration agreement. *Id.* at 1413.

[6] The parties do not address the choice of law issues potentially implicated by the fact that Plaintiffs and Opt-in Participants worked for Pool in different states and the Arbitration Agreements do not contain a choice of law provision. [##11, 27 (Pool analyzing validity of Arbitration Agreements under law of each state where Plaintiffs and Opt-in Participants worked); 26 (Plaintiff looking to general contract principles without specifying which state's law should apply), 31 (Plaintiff applying law of each state where Opt-in Participants worked)] A federal court sitting in diversity applies the conflict of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 497 (1941). Though the Court's jurisdiction in this case is not one of diversity, courts have applied *Klaxon* when analyzing state contract law in the context of determining whether there was a valid arbitration agreement in the context of federal employment claims. *See Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095,1116 n.3 (D.N.M. 2012); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 253 (D. Md. 2011); *see also Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (applying same choice of law principles in federal question arbitration cases as would govern in diversity cases); *United Gov't Sec. Officers of Am. v. Special Operations Grp., Inc.*, 436 F. Supp. 2d 790, 792 (E.D. Va. 2006) (finding that "federal courts should apply the *Klaxon* rule in federal question cases where, as here, federal law dictates some reference to, or borrowing from, state law"). Applying *Klaxon*, the Court looks to Colorado's choice of law jurisprudence. Colorado has adopted the choice of law principles set forth in the Restatement (Second) of Conflict of Laws and thereby applies the law of the state having "the most significant relationship" to the particular issue in dispute. *Wood Bros. Homes, Inc. v. Walker*

Here, there is no dispute that Plaintiffs and Opt-in Participants each signed the Arbitration Agreements. [## 11-2; 11-3; 27-2; 27-3]  There is also no dispute that Pool did not sign the Arbitration Agreements until more than two years after Plaintiffs and Opt-in Participants signed the Agreements and after they had left Pool's employ. [*Id.*] The first question, therefore, is whether the Arbitration Agreements were valid without Pool's signature.[7] The Court concludes that they were not.

The Arbitration Agreements provide that "[b]y entering their signatures below, the parties mutually agree to submit" their claims to binding arbitration. [*Id.*]  The plain language of the phrase "[b]y entering their signatures below" implies that the signature of each party is required to form a valid contract. If signatures were not necessary, then the Arbitration Agreements could have simply stated "[t]he parties mutually agree to submit" their claims to binding arbitration. Reading out the signature requirement renders the phrase "[b]y their signatures below" superfluous. And, it is a well-known

---

*Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979); *see also Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). One could argue that the state where each individual Plaintiff and Opt-in Participant resided and worked has the "most significant relationship" to whether that individual and Pool entered into a binding arbitration agreement. Alternatively, one could argue that Colorado has the "most significant relationship" to the issue of whether Mr. Hickerson, who is one of two named Plaintiffs and who worked for Pool in Colorado, may bring a collective FLSA action in a Colorado federal court. As set forth below, the law does not materially differ amongst the four states where Plaintiffs and Opt-in Participants worked. As a result, and especially without briefing by the parties on this choice of law issue, the Court need not resolve the choice of law question. *McKenna v. CDC Software, Inc.*, No. 08-cv-00110-EWN-MEH, 2008 WL 4197740, at *5 (D. Colo. Sept. 9, 2008); *see also Williams v. W. Enterprises, Inc.*, No. CIV-05-436-R, 2006 WL 8436112, at *1 (W.D. Okla. Oct. 17, 2006) (collecting cases for the proposition that where there are no differences between the relevant substantive laws of the respective states, there is no conflict and a court need not undertake a choice of law analysis).

[7] As detailed below, the Court concludes that the language used in these particular Arbitration Agreements required both parties' signatures. The Court thus does not take issue with the cases cited by Pool that stand for the proposition that signatures are generally not required to bind a party to arbitration.

principle of contract interpretation, recognized by each of the four states where Plaintiffs and Opt-in Participants worked, that "[s]ince an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous." Restatement (Second) of Contracts, § 203(b); *see also Brandwein v. Butler*, 218 Cal.App.4th 1485, 1507 (Cal. App. 2013); *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009); *Century Sur. Co. v. Charron*, 583 N.W.2d 486, 488 (Mich. App. 1998); *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237, 254 n.32 (Va. 2016).

The Court's conclusion that the Arbitration Agreements required both signatures to be effective is bolstered by Condition 17. There, it states: "By signing below, the undersigned applicant/employee/intern acknowledges that he/she has read, or has had read to him/her, all of the terms and conditions of this Agreement." [##11-2; 11-3; 27-2; 27-3] Thus, this language makes clear that it was only the applicant/employee/intern's signature that was required to vouch that he/she had reviewed the terms of the Arbitration Agreement. Had Pool, as the drafter of the Arbitration Agreements, intended the Agreements to only require the signature of the applicant/employee/intern, then Pool could—and presumably would—have used this same language in the introductory paragraph as follows: "By signing below, the undersigned applicant/employee/intern agrees to submit any and all claims" to arbitration. The fact that Pool used the singular representation in Condition 17 but not in the introductory paragraph suggests that it intended the Arbitration Agreement to require both signatures. *See, e.g.*, *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156–57 (10th Cir. 2007) ("When a contract uses different language in proximate and similar provisions, we commonly understand the provisions to illuminate one another and assume that the parties' use of

different language was intended to convey different meanings."); *Intuitive Surgical Operations, Inc. v. Midbrook, LLC*, No. 2:17-CV-10391, 2018 WL 3109587, at *6 n.4 (E.D. Mich. June 25, 2018) ("[W]hen interpreting contracts, courts presume that words and phrases have the same meaning throughout the contract. . . and the natural corollary that different words communicate different meanings").

Finally, even if an alternative explanation could be proffered for the inclusion of the "[b]y their signatures below" language—something Pool has not done—the contract is at best ambiguous. And it is another maxim of contract interpretation, recognized by the courts of each of the four states where Plaintiffs and Opt-in Participants worked, that ambiguous terms are construed against the drafter. Restatement (Second) of Contracts, § 206; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016); *Elliott v. Joyce*, 889 P.2d 43, 46 (Colo. 1994); *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003); *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849, 851 (Va. 1998). Thus, the ambiguity would be construed against Pool and Pool has not come forward with any extrinsic evidence suggesting that the parties did not intend to require both signatures. Indeed, the fact that Pool did eventually sign the Arbitration Agreements—albeit belatedly—suggests Pool believed that both signatures were needed. Accordingly, the Court concludes that the Arbitration Agreements required both signatures to be effective.

### B. Pool's Belated Signature did not Activate the Arbitration Agreements

Pool argues that it did eventually sign the Arbitration Agreements and, as a result, all parties signed, and Plaintiffs and Opt-in Participants should be bound by the

Agreements. [#28, 3-4] But Pool signed the Agreements two to three years after Plaintiffs and Opt-in Participants signed the Agreements, more than a year after any of the Plaintiffs or Opt-in Participants worked at Pool, and either shortly before or after Plaintiffs filed the instant lawsuit. This was not a reasonable time for Pool to manifest acceptance of the terms of the Arbitration Agreement. Restatement (Second) Contract, § 41(comment b) ("In the absence of a contrary indication, just as acceptance may be made in any manner and by any medium which is reasonable in the circumstances . . ., so it may be made **at any time which is reasonable in the circumstances**."(emphasis added)); *see also Brown v. Allied Home Mort'g Cap. Corp.*, No. JKB-11-667, 2011 WL 3351532, at *1-2 (D. Md. Aug. 2, 2011) (concluding that no contract was formed when party who drafted arbitration agreement did not sign until years later; "the time for Allied to sign the contract had long since lapsed").

Pool nonetheless argues that the language in Condition 14 demonstrates that its signature could be added at any time. [#28 at 3-4] Condition 14 states: "The parties mutually agree that this Agreement includes any claims or controversies occurring or arising prior to, on, or subsequent to the date hereof, subject to the provisions of [Condition] 18 below." [##11-2; 11-3; 27-2; 27-3] But nothing in this language suggests that the parties could sign the Arbitration Agreement, at any time, even (theoretically) decades into the future. Rather, this language merely contemplates that once the parties entered into the Arbitration Agreement, it would cover all disputes between the parties. The problem for Pool is that it never entered into the Arbitration Agreements.

Similarly, Pool argues that Condition 18 provided Plaintiffs and Opt-in Participants an opt-out period and thus their "failure to 'opt out'—coupled with their

continued employment with Pool—clearly evidences their voluntary acceptance of the Agreement's terms." [#11 at 9; *see also* 28 at 4] Once again, however, this argument relies upon the mistaken premise that the parties actually entered into the Arbitration Agreements—*i.e.,* Condition 18 provided Plaintiffs and Opt-in Participants the option to cancel or revoke the Arbitration Agreements **after they were executed**. For the reasons outlined above, because Pool never signed the Arbitration Agreements, the parties never entered into those Agreements.

To the extent Pool argues that the existence of an arbitration agreement should be implied based upon Plaintiffs' and Opt-in Participants' continued employment [#11 at 9], Pool has not offered any evidence that employees were required to enter into the Arbitration Agreements such that the existence of an arbitration agreement may be inferred based upon their continued employment. *See Johns v. Sterling Jewelers,* No. CIV.06-14327, 2006 WL 3759905, at *1 (E.D. Mich. Dec. 20, 2006) (finding implied in fact arbitration agreement where employer "notified all employees, through written materials, employee meetings, and workplace posters, that participation in the . . . program [requiring the arbitration of disputes] was mandatory" and employee "chose to remain employed . . . even after being so notified"); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 65 (Cal. App. 2013) ("Case law clearly requires an employee receive notice of a condition the employer places on the employee's employment before the employee can impliedly accept that condition by beginning or continuing to work for the employer."). Indeed, during oral argument, Pool affirmatively stated that signing the Arbitration Agreement was not a condition of employment. [#36,

audio recording at 9:14:29-9:14:41] Thus, Plaintiffs' and Opt-in Participants' continued employment did not imply the existence of an arbitration agreement.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Pool's Motion to Compel [#11] and Second Motion to Compel [#27] be **DENIED.**[8]

DATED: March 26, 2020
                                              BY THE COURT:

                                              s/Scott T. Varholak
                                              United States Magistrate Judge

---

[8] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).