IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02229-CMA-STV

ALEC HICKERSON, and
ADINAM MOTEN, *on behalf of themselves and all similarly situated* persons,

    Plaintiffs,

v.

POOL CORPORATION, a Delaware corporation,

    Defendant.

## ORDER REJECTING RECOMMENDATION OF MAGISTRATE JUDGE AND GRANTING DEFENDANT'S MOTIONS TO COMPEL ARBITRATION

This matter is before the Court on the March 26, 2020 Recommendation of United States Magistrate Judge ("the Recommendation") (Doc. # 38), wherein Magistrate Judge Scott T. Varholak recommends that this Court deny both Defendant Pool Corporation's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit ("First Motion to Compel") (Doc. # 11) and Defendant Pool Corporation's Second Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit ("Second Motion to Compel") (Doc. # 27). Defendant objected to the Recommendation. (Doc. # 40.) For the reasons that follow, the Recommendation is rejected, both Motions to Compel are granted, and the instant case is stayed pending arbitration.

### I.    BACKGROUND

Judge Varholak described the relevant background of this case in the

Recommendation (Doc. # 38 at 1–3), which is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B) (2018); Fed. R. Civ. P. 72(b). The Court therefore recounts only the facts necessary to address Defendant's objections to the Recommendation.

Defendant Pool Corporation ("Pool") is a wholesale distributor of swimming pool equipment, parts, and supplies, and related leisure products. (Doc. # 1 at ¶ 4); (Doc. # 11-1 at ¶ 4). Pool has operations throughout the United States. (*Id.*) Plaintiff Alec Hickerson was an Operations Manager at Pool's Littleton, Colorado, location from about June 2016 to May 2017. (Doc. # 1 at ¶¶ 12–13.) Plaintiff Edinam Moten was an Operations Manager at Pool's Livonia, Michigan, location from about June 2017 to March 2018. (Doc. # 1 at ¶¶ 14–15); (Doc. # 11-1 at ¶ 12). Plaintiffs bring this action on behalf of themselves and all current and former exempt-classified Operations Managers who work and/or have worked for Pool within the United States at any time from August 5, 2016 to the date of judgment in this action. *See generally* (Doc. # 1).

Following the initiation of this case, two additional former Pool employees, Esteban Guijarro and Nathaniel Webber ("Opt-in Participants"), filed a Notice of Consent to Join this action as plaintiffs. (Doc. # 25.) Mr. Guijarro was employed by Pool in California from about June 2016 to January 2017. (Doc. # 27-1 at ¶ 11); (Doc. # 31 at 9). Mr. Webber was employed by Pool in Virginia from about June 2016 to December 2016. (Doc. # 27-1 at ¶ 12); (Doc. # 31 at 9).

Beginning in late 2015, Pool implemented a dispute resolution policy whereby employees and the Company agreed to submit any and all claims between them to binding arbitration. (Doc. # 11-1 at ¶ 5); (Doc. # 27-1 at ¶ 5). The Arbitration

Agreements were made part of the "new hire" packet that was presented to newly hired employees. (*Id.*) In 2016, Pool revised its Employee Handbook to include a section titled "ARBITRATION," which reads as follows:

> Arbitration is a process by which you and the Company will present certain disputes between us to a neutral third party called an Arbitrator. The details, terms and conditions under which you and the Company will submit certain claims to arbitration are provided for in a separate Arbitration Agreement that has been provided to you by the Company. For more information about arbitration, or to request a copy of your Arbitration Agreement with the Company, please contact the Human Resources Department.

*See* (Doc. # 11-6 at 8); (Doc. # 27-6 at 8). Each Plaintiff and Opt-in Participant[1] electronically signed an Acknowledgment that they received and read the Pool Employee Handbook. (Doc. ## 11-4, 11-5, 27-4, 27-5.)

Additionally, Plaintiffs each electronically signed identical Arbitration Agreements when hired by Pool using Pool's electronic onboarding software, Taleo. (Doc. # 11-1 at ¶¶ 15–16); (Doc. # 27-1 at ¶¶ 15–16); *see also* (Doc. ## 11-2, 11-3, 27-2, 27-3). Each Arbitration Agreement begins as follows:

> This Arbitration Agreement ("Agreement") is made by and between [Pool] and the undersigned applicant, employee, paid or unpaid intern or individual applying for or holding a compensated position with [Pool] ("the undersigned applicant/employee/intern") (collectively "the parties").
>
> By their signatures below, the parties mutually agree to submit any and all claims that may arise between [Pool] and the undersigned applicant/employee/intern that cannot be resolved internally to binding arbitration subject to the following terms and conditions:

(Doc. ## 11-2, 11-3, 27-2, 27-3.) The Arbitration Agreements proceed to list twenty terms and conditions. (*Id.*) The following are relevant to the instant Motions:

---

[1] Hereinafter, for the sake of brevity, the Court refers to Plaintiffs and the Opt-in Participants collectively as "Plaintiffs."

3

- Condition 1 requires (with exceptions not relevant here) that all claims, disputes, or controversies arising between the parties shall be submitted to binding arbitration, including claims brought under the Fair Labor Standards Act ("FLSA"). (*Id.*)

- Condition 7 states that the applicant's "acceptance of employment and/or continued employment with POOL constitutes adequate consideration for entering into this Agreement." (*Id.*)

- Condition 12 provides that "[t]he parties mutually agree that this Agreement Constitutes a Waiver of any Right of either party to bring a lawsuit and to a jury trial concerning any dispute covered by this Agreement." (*Id.*) (emphasis omitted).

- Condition 13 prohibits class or collective actions. (*Id.*)

- Condition 17 states that "By signing below, the undersigned [applicant] acknowledges that he/she has read . . . all of the terms and conditions of this Agreement. . . . [and] declares that he/she makes this acknowledgment knowingly, voluntarily, and of his/her own free will, without duress or any other promises." (*Id.*)

- Condition 18 provides an opt-out period as follows:

This Agreement is being entered into on a voluntary basis. The applicant/employee/intern acknowledges that he/she will have seven (7) days following the date of execution of this Agreement to cancel and revoke this Agreement, and this Agreement will not be enforceable or effective until the expiration of the seven (7) day period. In the event applicant/employee/intern does not revoke this Agreement within the seven (7) day revocation period, the applicant/employee/intern agrees that employment and/or continued employment with [Pool] beyond the seven

4

(7) day revocation period constitutes a ratification of his/her voluntary acceptance of the terms of this Agreement. . . .

(*Id.*) Following the terms and conditions, the Arbitration Agreements include signature lines for both the applicant/employee/intern and a Pool representative and reads "[a]greed and accepted." (*Id.*)

Each of the four Plaintiffs electronically signed their Arbitration Agreement. (Doc. ## 11-2, 11-3, 27-2, 27-3.) No Plaintiff opted out of the Arbitration Agreement as provided by Condition 18. (Doc. # 11-1 at ¶ 21); (Doc. # 27-1 at ¶ 21). Each continued to work for Pool following the opt-out period. Pool did not sign any of the Arbitration Agreements until June 2019, shortly before this lawsuit was initiated and after Plaintiffs had left Pool's employ. (Doc. ## 11-2, 11-3, 27-2, 27-3.)

Through the Motions, Pool seeks to compel arbitration of Plaintiffs' claims. *See generally* (Doc. ## 11, 27). Judge Varholak recommended denying the Motions on the basis that the Arbitration Agreements expressly require Pool's signature to take effect. Pool objected to the Recommendation (Doc. # 40), and Plaintiffs filed a response (Doc. # 41).

## II.     LEGAL STANDARDS

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a Recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge " determine *de novo* any part of the magistrate judge' s [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

In conducting its review, " [t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.      MOTIONS TO COMPEL ARBITRATION**

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 1 *et seq.*; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (finding that employment contracts fall within the FAA, except "contracts of employment of transportation workers"). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1370 (D. Colo. 2014) ("*Nesbitt I*") (same), *aff'd*, 811 F.3d 371 (10th Cir. 2016) ("*Nesbitt II*"). The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

"[A]lthough the presence of an arbitration clause generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (citations omitted) (unpublished); *see also Nesbitt I*,

74 F. Supp. 3d at 1370. "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedone Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable." *Nesbitt I*, 74 F. Supp. 3d at 1371 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

In considering a motion to compel arbitration under the FAA, the court applies "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Bellman*, 563 F. App'x at 612. The burden then shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.*; *BigBen 1613, LLC v. Belcaro Grp., Inc.*, No. 17-CV-00272-PAB-STV, 2018 WL 4257321, at *2 (D. Colo. Sept. 6, 2018). If the court determines a valid and enforceable arbitration agreement exists, the FAA applies.

### III.   DISCUSSION

In the Recommendation, Judge Varholak concludes that the Arbitration Agreements required both parties' signatures to be effective and that Pool's untimely signatures did not create binding contracts. Pool objects to the Recommendation, in part, on the basis that offer, acceptance, and consideration are established under state law, and thus a contract was formed between the parties without Pool's signature.

7

Plaintiffs respond that, through the phrase "by their signatures," the Arbitration Agreements explicitly require the signatures of both parties as a condition precedent to contract formation, or in the alternative, that the contract language is ambiguous and should be construed against the drafter, Pool.

The Court applies the contract law of the states in which Plaintiffs electronically signed their respective Arbitration Agreements—Colorado, Michigan, Virginia, and California—in determining whether the parties reached an agreement to arbitrate. *See Nesbitt I*, 74 F. Supp. 3d at 1371. The Court first addresses the threshold issue of whether the Arbitration Agreements required Pool's signature to be valid and ultimately concludes that the Agreements are enforceable without Pool's signature.

**A.    WHETHER THE ARBITRATION AGREEMENTS REQUIRED POOL'S SIGNATURE TO BE VALID**

In support of Judge Varholak's conclusion that the Arbitration Agreements required both parties' signatures to take effect, Plaintiffs argue that the phrase "by their signatures" made Pool's signature a condition precedent to the formation of an agreement to arbitrate. The Court disagrees.

As a general matter, arbitration agreements must be in writing, but they need not be signed. *Csukardi v. Platinum Corral, LLC*, No. 6:16-CV-00064, 2017 WL 639376, at *4 (W.D. Va. Feb. 16, 2017); *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010) ("[T]he lack of signature in and of itself does not invalidate an otherwise enforceable agreement to arbitrate."). "[T]he parties may be bound by a writing signed by only one party so long as it is assented to by the other." *Orbis, Inc. v. Objectwin Tech., Inc.*, No. 7:06CV00372, 2007 WL 2746958, at *4 (W.D. Va. Sept. 20,

8

2007); *see also Ehresman v. Bultynck & Co., P.C.*, 511 N.W.2d 724, 726 (Mich. App. 1994) (citations omitted) ("where mutuality of assent is established, written arbitration agreements do not have to be signed in order for the agreement to be binding"). However, there is an exception to this general rule "when the terms of the contract make the parties' signatures a condition precedent to the formation of the contract." *Adam v. Wells Fargo Bank*, N.A., 901 F. Supp. 2d 623, 633 (D. Md. Sept. 28, 2012). "[W]hether the signing of [an] instrument is a condition precedent to its becoming a binding contract usually depends on the intentions of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways." *Ehresman*, 511 N.W.2d at 726 (quoting 17 CJS, Contracts, § 62 at 731–33).

In the instant case, there is no condition precedent because the Agreement did not use explicitly conditional language.[2] Rather, the Agreement states: "By their signatures below, the parties mutually agree to submit any and all claims that may arise between [them] that cannot be resolved internally to binding arbitration . . . ." (Doc. ## 11-2, 11-3, 27-2, 27-3.) The Court finds that the phrase "by their signatures" indicates one manner of manifesting assent to the Agreement, but it does not preclude parties from binding themselves to the Agreement in other ways. *Cf. Craddock v. LeClair Ryan, P.C.*, No. 3:16-CV-11, 2016 WL 1464562, at *5 (E.D. Va. Apr. 12, 2016) ("[W]hen a contract lists one possible manner of acceptance, without stating that such a manner is the only permissible manner of acceptance, contract law treats the possible manner as

---

[2] For example, the Agreement did not provide that the contract would be effective "on condition that" it was executed by both parties, "provided that" it was executed by both parties, or "if" it was executed by both parties. *See* Restatement (Second) of Contracts § 226 cmt. a (2004) (noting that no particular words are required to make an event a condition precedent, but the terms 'on condition that,' 'provided that' and 'if' are often used for that purpose).

9

a suggestion, and leaves the offeree free to accept the contract in the suggested manner <u>or</u> in any other reasonable manner.") (emphasis in original). Because the express language of the Agreement does not require the signature of both parties, and because the Court construes the Agreement "as written, without adding terms that were not included by the parties,"[3] the Court concludes that Pool's signature was not a condition precedent to the formation of an agreement to arbitrate. *Cf. Am. Web Press, Inc. v. Harris Corp.*, 596 F. Supp. 1089, 1092 (D. Colo. 1983) (finding a condition precedent existed where the defendant made clear that any formal offer had to be submitted on the defendant's printed form in order to create an enforceable contract).

In reaching this conclusion, the Court finds a useful comparison in *Craddock*, 2016 WL 1464562, at *3, which involved a signature provision materially similar to that of the Arbitration Agreements in this case. In *Craddock*, the Eastern District of Virginia rejected the plaintiff's argument that she was not bound to an arbitration provision because she did not sign it. *Id.* The shareholder agreement at issue stated, in relevant part: "[e]ach Shareholder understands that **by signing this agreement** he or she agrees . . . to submit any claims arising out of . . . his or her relationship with the Corporation . . . to binding arbitration." *Id.* at *4 (emphasis added). The plaintiff argued that this agreement specified only one manner of acceptance—a signature—and that she was not bound by the agreement because she did not sign it. The Court rejected that argument and concluded that the "by signing this agreement" language specified an

---

[3] *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002) (citing *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984)).

unquestionably valid method of acceptance but did not exclude acceptance in any other manner reasonable under the circumstances. *Id.* at *5–*8.

Similarly, in *Lowry v. Lauren Bienenstock & Assocs. Inc.*, No. 317516, 2014 WL 7338880, at *3 (Mich. App. Dec. 23, 2014), the Michigan Court of Appeals held that the parties had reached an enforceable agreement to arbitrate despite the defendant's lack of signature where the agreement provided that "execution shall cause this Agreement to be the legal and binding obligation of such party." *Lowry*, 2014 WL 7338880, at *3–4 (emphasis omitted). The plaintiff maintained that the agreement should be "interpreted to mean that no contract may be formed without signatures by both parties," and the Court of Appeals squarely rejected the plaintiff's argument:

> Contrary to the basic rules of contract interpretation, this reading by plaintiff adds terms not expressed in the contract's plain language and essentially rewrites the agreement between the parties. That is, while clearly paragraph 9 provides that execution shall cause the agreement to be binding on the signing party, it does not state that this is the *only* method by which the parties may manifest an intent to be bound by the ICA's terms or that neither party is bound if one party does not sign. . . . . [T]he clause says nothing to condition the agreement's enforceability on execution by both parties. Because such restrictions are not expressed in the contract's plain language, we will not add such terms to the agreement.

*Id.* (citation omitted). The court concluded that the arbitration agreement was enforceable because the defendants otherwise manifested a willingness to be bound to it. Such is the case here, as the Arbitration Agreement indicates Pool's willingness to be bound.[4] *See Sweeney v. Tractor Supply Co.*, 390 F. Supp. 3d 1152, 1157 (N.D. Cal.

---

[4] The Agreement is part of the onboarding process for new employees, it is "made by and between" Pool and its employees, and it includes a mutual exchange of promises that applies to both parties: "the parties mutually agree to submit any and all claims that may arise between

11

2019) (discussing factors that indicate employer's intent to be bound by unsigned arbitration agreement); *see also Ehresman*, 511 N.W.2d at 726. Plaintiffs' signatures and continued employment at Pool, coupled with Pool's manifestations of intent to be bound to the Agreement, established a binding agreement to arbitrate, as discussed further below.

## B. WHETHER A CONTRACT WAS FORMED BETWEEN THE PARTIES

### 1. Applicable Law

Under Colorado law, a valid contract, including an arbitration agreement, "requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012).

Similarly, under Michigan law, a valid contract requires offer and acceptance, *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. App. 2006), and "'mutual assent' to be bound—that is, the parties must have a 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. App. 2014). Whether there has been a meeting of the minds must be judged from "the expressed words of the parties and their visible acts*." Id.*

"Virginia contract law requires the standard elements of offer, acceptance, and consideration for the formation of a valid contract." *Hill v. Alstom Power, Inc.*, No. 3:13-CV-00496-JAG, 2013 WL 6408416, at *2 (E.D. Va. Dec. 6, 2013); *Montagna v. Holiday*

---

POOL and the undersigned applicant/employee/intern that cannot be resolved internally to binding arbitration." *See, e.g.*, (Doc. # 11-2 at 2).

*Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980) (same). Acceptance "may be inferred from the acts and conduct of the parties." *Durham v. Nat'l Pool Equip. Co. of Va.*, 138 S.E.2d 55, 58 (Va. 1964); *In re Frye*, 216 B.R. 166, 171 (E.D. Va. 1997) (holding that a party may convey his acceptance of a contract to another party "in a variety of ways so long as the actions or conduct can be interpreted objectively as constituting an acceptance".)).

Lastly, "California law requires four elements to form a valid contract: 1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1193 (C.D. Cal. 2007) (citing Cal. Civ. Code §§ 1550, 1565).[5] Consent is mutual if "the parties all agree upon the same thing in the same sense," Cal. Civ. Code § 1580, which can be established by the parties' outward manifestations. *Bowers v. Raymond J. Lucia Co., Inc.*, 206 Cal. App. 4th 724, 733 (2012).

2. <u>Analysis</u>

Under the law of all four states, a valid agreement to arbitrate was reached in the instant case because the elements of offer, acceptance, and consideration were satisfied and the parties demonstrated mutual assent to be bound to the Arbitration Agreements. Pool extended offers to arbitrate to Plaintiffs by uploading the Arbitration Agreements to its onboarding software and presenting the Agreements to Plaintiffs for their signatures. Plaintiffs accepted the offers by signing the Agreements as-is. *See, e.g.*, *Green v. Gallucci*, 426 N.W.2d 693, 695–96 (Mich. App. 1988) (holding binding

---

[5] Plaintiffs do not dispute the first or third elements of a valid contract under California law—i.e., that they are capable of contracting or that they contracted for a lawful object. Accordingly, the Court focuses its analysis herein on the second and third elements only.

contract to arbitrate was established between hospital and doctors at the moment the doctors signed the agreements); *Nucla Sanitation Dist. v. Rippy*, 344 P.2d 976, 979 (Colo. 1959).

Further, both parties demonstrated mutuality of assent to the Agreements. Plaintiffs manifested their assent by signing the Agreements, by not opting out of the Agreements within the seven-day opt-out period provided by Condition 18,[6] and by continuing to work for Pool thereafter. *See, e.g.*, *Pakideh v. Franklin Commercial Mortg. Grp., Inc.*, 540 N.W.2d 777, 781 (Mich. App. 1995) (citations omitted) ("As a general rule, assent to an offer may be indicated by acts as well as by words."); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 416–17 (2000) ("[A] party's acceptance of an agreement to arbitrate may be express or implied-in-fact, as where an employee's continued employment constitutes acceptance of an agreement proposed by the employer."). Pool also manifested its assent in numerous ways; it drafted the Agreements, presented them to Plaintiffs for signature through the Taleo onboarding software, included reference to the Agreements in the Employee Handbook, had Plaintiffs sign an acknowledgment that they received and read the Employee Handbook, and continued to employ Plaintiffs after they signed the Agreements. *See Green*, 426 N.W.2d at 695–96 (concluding mutuality of assent to arbitrate "was established when the hospital offered the participation agreements to the doctors and the doctors accepted them by signing").

---

[6] The provision stated: "In the event applicant/employee/intern does not revoke this Agreement within the seven (7) day revocation period, the applicant/employee/ intern agrees that employment and/or continued employment with POOL beyond the seven (7) day revocation period constitutes a ratification of his/her voluntary acceptance of the terms of this Agreement."

Lastly, the Arbitration Agreements are supported by two kinds of consideration. First, Plaintiffs' continued employment constituted sufficient consideration for entering into the Arbitration Agreements. *See Grady v. DirecTV Customer Servs.*, *Inc.* No. 14-cv-03474-CMA-NYW, 2015 WL 3619337, at *4 (D. Colo. Jun. 10, 2015); *Davis v. Meade Grp., Inc.*, No. 262189, 2006 WL 51372, at *2 (Mich. App. Jan. 10, 2006); *Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2000). Second, the mutual promise to arbitrate also constituted sufficient consideration. *Tarpley v. Livings*, No. 4:16-CV-00021, 2016 WL 4537751, at *4 (W.D. Va. Aug. 30, 2016) (under Virginia law, "a mutual promise to arbitrate itself constitutes sufficient consideration for an arbitration agreement.").

Therefore, the Arbitration Agreements satisfy each requirement of a valid contract under Colorado, Virginia, Michigan, and California law. Accordingly, the Court concludes that Pool has carried its burden to present "evidence sufficient to demonstrate the existence of an enforceable agreement," and Plaintiffs have not raised a genuine dispute of material fact regarding the existence of an agreement. *Bellman*, 563 F. App'x at 612. Because the Court has determined that Pool's signature was not a condition precedent to the Arbitration Agreements taking effect, it need not reach the question of whether Pool waived its right to arbitration through its delay in signing the Agreements. As valid and enforceable arbitration agreements exist between the parties, the FAA requires this Court to compel arbitration of Plaintiffs' claims. *Dean Witter Reynolds Inc.*, 470 U.S. at 218.

## IV.     CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Defendant's Objections to Magistrate Judge's Report and Recommendation (Doc. # 40) are SUSTAINED;

- The March 26, 2020 Recommendation of United States Magistrate Judge (Doc. # 38) is REJECTED;

- Defendant Pool Corporation's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (Doc. # 11) is GRANTED;

- Defendant Pool Corporation's Second Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Lawsuit (Doc. # 27) is GRANTED;

- Pursuant to 9 U.S.C. §§ 3–4, the parties shall proceed to arbitration in the manner provided for in their Arbitration Agreements and the instant action is hereby STAYED pending resolution of the arbitration proceedings; and

- The Clerk of Court is directed, pursuant to D.C.Colo.LCivR 41.2, to ADMINISTRATIVELY CLOSE the above-referenced civil action until August 24, 2021, at which time this case will be dismissed entirely unless, prior to that date, one or both of the parties file a request to have the case remain pending as administratively closed because the arbitration has not been completed, or file a motion to reopen or dismiss the case based on the arbitrator's order in the arbitration proceeding.

DATED: August 25, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge